**Catherine L. CLIFTON,**
**Appellee/Petitioner,**

v.

**Homer R. CLIFTON,**
**Appellant/Respondent.**

No. 70357.

Supreme Court of Oklahoma.

Sept. 18, 1990.

Rehearing Denied Dec. 4, 1990.

Paul G. Smith, Norman, for appellee/petitioner.

Jack Dempsey Pointer, Jr., Oklahoma City, for appellant/respondent.

KAUGER, Justice:

■■■■ The dispositive question presented on certiorari is whether, pursuant to 12 O.S. Supp.1987 § 1289(F),[1] a post-decree property settlement can be modified to award to the wife a proportionate share of military retirement benefits earned by the husband during the marriage. We find that, in the absence of fraud, a property settlement award, as opposed to an award for support alimony, cannot be modified in a post-decretal hearing. The wife relies on *Nantz v. Nantz,* 749 P.2d 1137, 1141 (Okla. 1988), in which we held that 12 O.S. Supp. 1987 § 1289(D) and (E) could be applied retroactively to modify an award for support. Here, the issue is the retroactive modification of a property settlement agreement included within a final divorce decree. Property division was not an issue in *Nantz,* and when the Clifton's were divorced, military retirement benefits were nondivisible under *Baker v. Baker,* 546 P.2d 1325–26 (Okla.1975). The Court of Appeals reversed the trial court's award of benefits. We granted certiorari on April 2, 1990 to consider an issue of first impression. We find that property settlement awards are not modifiable pursuant to § 1289(F), and that *Nantz* does not support the wife's position. Because the *Clifton* decree cannot be modified to divide the military pension, we need not address the issue of retrospective modification of vested property rights.

### FACTS

The appellee/petitioner, Catherine L. Clifton (wife), and the appellant/respondent, Homer R. Clifton (husband), were married on April 12, 1966. The husband served in the military for twenty years— sixteen of which occurred during the marriage. The wife filed for divorce on January 25, 1983. The parties entered into an agreed settlement which was approved by the court, and a divorce was granted on August 31, 1983.[2] At the time of the divorce, the husband had begun receiving $700.00 per month in military retirement pay. The trial court found the retirement

---

1. Title 12 O.S.Supp.1987 § 1289(F) provides: "Pursuant to the federal Uniformed Services Former Spouse's Protection Act (PL 97–252), the provisions of subsection E of this section shall have retrospective and prospective application with regards to modifications for the purpose of obtaining support or payments pertaining to a division of property on divorce decrees which become final after June 26, 1981."

Section 1289 was renumbered effective November 1, 1989. It now appears at 43 O.S.Supp.1989 § 134.

2. As entered, the divorce decree indicated that the divorce was granted on November 18, 1983. An order *nunc pro tunc* was entered on February 6, 1984, to reflect the correct date of August 31, 1983.

benefits were not subject to division, and the husband's military retirement was awarded to him under the terms of the decree. The decree did not provide for support payments to the wife, or for payments in lieu of a property award. Neither party appealed from the entry of the decree of divorce.

On October 9, 1987, the wife filed a motion to modify the divorce decree to include 50% of the husband's gross military retirement pay as jointly acquired property, including cost of living increases. Citing 12 O.S.Supp.1987 § 1289(F), the trial court sustained the motion to modify on January 12, 1988. The wife was awarded 40% of the retirement pay[3] based upon a formula which took into consideration the number of years of marriage, and the number of years of military service. In an unpublished opinion, the Court of Appeals reversed. We granted certiorari on April 2, 1990, to consider a question of first impression in Oklahoma.

IN THE ABSENCE OF FRAUD, A PROPERTY SETTLEMENT AWARD, AS OPPOSED TO AN AWARD FOR SUPPORT ALIMONY, CANNOT BE MODIFIED IN A POST–DECRETAL HEARING.

The wife asserts that pursuant to 12 O.S. Supp.1987 § 1289(F), trial courts may retroactively modify property settlement provisions of divorce decrees rendered after June 26, 1981, to divide military retirement pay. Complex and unique circumstances surround the law of division of military pensions. This Court first addressed the issue in *Baker v. Baker*, 546 P.2d 1325–26 (Okla.1975). We held in *Baker* that military retirement benefits were not property acquired during coverture subject to division between the parties. On June 26, 1981, in *McCarty v. McCarty*, 453

U.S. 210, 228, 101 S.Ct. 2728, 2739, 69 L.Ed.2d 589, 603 (1981), the United States Supreme Court ruled that, as a matter of federal law, state courts could not subject military retirement pay to division upon divorce. Congress responded to *McCarty* on June 26, 1981, by enacting the Uniformed Services Former Spouses' Protection Act (Spouses' Protection Act). The Spouses' Protection Act provides in 10 U.S.C. § 1408(c)(1) (1982) that:

"Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."

■ In enacting § 1408, Congress intended to leave the issue of division of military retirement benefits to the states. Nothing in the enactment requires division. Under the Spouses' Protection Act, state courts are permitted to apply state divorce laws to military retirement pay.[4] The *Baker* teaching that military retirement benefits were not divisible, was the prevailing law in Oklahoma when this divorce was filed on January 25, 1983. It was not until 1987, with the promulgation of *Stokes v. Stokes*, 738 P.2d 1346, 1348 (Okla.1987), that we determined that military pensions may be divisible as jointly acquired property.[5] In *Stokes*, we referred to § 1289(F) as an indication that the Legislature intended for military retirement pensions to be subject to property division. However, unlike the situation here, *Stokes* did not involve the retroactive division of military retirement benefits. *Stokes* arose as an appeal from the trial court's finding that the husband's military pension was not divisible as jointly acquired property.

The Spouses' Protection Act does not compel the post-decree disposition of mari-

---

3. As of January 2, 1988, the husband was receiving monthly retirement benefits of $810.00.

4. *Casas v. Thompson*, 42 Cal.3d 131, 228 Cal. Rptr. 33, 42–43, 720 P.2d 921, 930 (1986), *cert. denied*, 479 U.S. 1012, 107 S.Ct. 659, 93 L.Ed.2d 713 (1986); *Edsail v. Superior Court*, 143 Ariz. 240, 693 P.2d 895, 897 (1984); Note, "Closing

the *McCarty*–USFSPA Window: A Proposal for Relief from *McCarty*–Era Final Judgments," 63 Tex.L.Rev. 497–98, 509 (1984); S.Rep. No. 502, 97th Cong., 2d Sess.1982, U.S.Code Cong. & Ad. News 1555, 1596, 1598–1599.

5. This position has been reaffirmed. See, *Rookard v. Rookard*, 743 P.2d 1083 (Okla.1987).

tal property.[6] Therefore, the wife is entitled to division of the husband's military retirement benefits only if Oklahoma law provides a mechanism which allows the district court to reopen the final decree.[7] The wife contends that § 1289(F) provides such a procedure.

■■■ Section 1289(F) states that it shall have retrospective effect "for the purpose of obtaining support or payments pertaining to a division of property on divorce decrees which become final after June 26, 1981." On initial reading of the statute, the wife's position appears meritorious. However, this language cannot be read in isolation.[8] The determination of legislative intent is the goal of statutory construction.[9] To ascertain the intent of the Legislature in enacting § 1289(F), we must consider the other portions of § 1289,[10] and other enactments relating to property division.[11] Where possible, relevant portions of a statute and related enactments will be considered together to give force and effect to all of them.[12]

Taken in isolation, the quoted portion of § 1289(F)[13] appears to support a conclusion that property divisions finalized after June 26, 1981, may be subject to retroactive redistribution. However, on closer inspection, it is apparent that the provision for retroactive reopening of divorce decrees relates only to modifications of payments of alimony as support. Subsection (F) refers the reader to subsection (E)[14] stating that "the provisions of subsection (E) of this section shall have retrospective ... application." Subsection (E) provides for the modification of alimony for support upon proof of changed circumstances. There is no reference in subsection (E) to modification of a property division.

The conclusion that the Legislature intended for § 1289(F) to apply only to payments of support alimony is bolstered by other subsections found within § 1289, and by the statutory scheme relating to divorce. Subsection (A) of § 1289[15] directs the trial court to designate, at the time the original divorce decree is entered, the dol-

**6.** *Bishir v. Bishir,* 698 S.W.2d 823, 825 (Ky.1985); *Goad v. Goad,* 768 S.W.2d 356, 358 (Tex.Ct.App. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 722, 107 L.Ed.2d 742 (1990).

**7.** *Andresen v. Andresen,* 317 Md. 380, 564 A.2d 399, 403 (1989). See also, *Curl v. Curl,* 115 Idaho 997, 772 P.2d 204, 210 (1989).

**8.** *Cowart v. Piper Aircraft Corp.,* 665 P.2d 315, 317 (Okla.1983); *Earnest, Inc. v. LeGrand,* 621 P.2d 1148, 1151 (Okla.1980).

**9.** *Humphrey v. Denney,* 757 P.2d 833, 835 (Okla. 1988); *Fuller v. Odom,* 741 P.2d 449, 452 (Okla. 1987).

**10.** *Dana P. v. State,* 656 P.2d 253, 258 (Okla. 1982); *Becknell v. State Indus. Court,* 512 P.2d 1180, 1183 (Okla.1973); *Adams v. Fry,* 204 Okla. 407, 230 P.2d 915, 917 (1951).

**11.** *Independent School Dist. No. 89 v. Oklahoma City Fed'n,* 612 P.2d 719, 721 (Okla.1980); *Appeal of Price,* 88 Okl. 156, 212 P. 424–25 (1923).

**12.** *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n,* 764 P.2d 172, 179 (Okla.1988); *AMF Tubescope Co. v. Hatchel,* 547 P.2d 374, 379 (Okla.1976).

**13.** Title 12 O.S.Supp.1987 § 1289(F), see note 1, supra.

**14.** Title 12 O.S.Supp.1987 § 1289(E) provides:

"Except as otherwise provided in subsection D of this section, the provisions of any divorce decree pertaining to the payment of alimony as support may be modified upon proof of changed circumstances relating to the need for support or ability to support which are substantial and continuing so as to make the terms of the decree unreasonable to either party. Only those installments accruing subsequent to the motion for modification may be modified."
Section 1289 was renumbered effective November 1, 1989. It now appears at 43 O.S.Supp.1989 § 134.

**15.** Title 12 O.S.Supp.1987 § 1289(A) provides:

"In any divorce decree which provides for periodic alimony payments, the court shall plainly state, at the time of entering the original decree, the dollar amount of all or a portion of each payment which is designated as support and the dollar amount of all or a portion of the payment which is a payment pertaining to a division of property. The court shall specify in the decree that the payments pertaining to a division of property shall continue until completed. Payments pertaining to a division of property are irrevocable and not subject to subsequent modification by the court making the award."
Section 1289 was renumbered effective November 1, 1989. It now appears at 43 O.S.Supp.1989 § 134.

lar amount awarded as support and as property division. Subsection (A) also requires the trial court to specify that payments for property continue until completed. It further provides that *"payments pertaining to a division of property are irrevocable and not subject to subsequent modification."* [16]

■ Were we to conclude that subsection (F) controlled a readjustment of property division, an irreconcilable conflict would be created with subsection (A), which declares that payments pertaining to property cannot be modified. A reasonable reading of subsection (F) brings us to the conclusion that it must apply only to payments for support alimony. [17] Therefore, we adopt the construction which avoids conflict, [18] and hold that a divorce decree cannot be modified, pursuant to § 1289, to divide military retirement benefits, not divisible at the time of divorce, as jointly acquired property. The states which have considered retroactive division of military retirement benefits are almost equally divided on the issue. [19] However, the majori-

**16.** Emphasis supplied.

**17.** When considering the original enactment of 12 O.S.Supp.1987 § 1289(F), see note 1, supra, this interpretation is reasonable. The language relating to the Spouses's Protection Act and to the retrospective and prospective application for modifications to obtain support or payments pertaining to a division of property was originally a part of § 1289(E). Title 12 O.S.Supp. 1985 § 1289(E) provides:

> "Except as otherwise provided in subsection D of this section, the provisions of any divorce decree pertaining to the payment of support may be modified upon proof of changed circumstances relating to the need for support or ability to support which are substantial and continuing so as to make the terms of the decree unreasonable to either party. Only those installments accruing subsequent to the motion for modification may be modified. The provisions of this subsection shall have retrospective and prospective application with regards to modifications for the purpose of obtaining support or payments pertaining to a division of property on divorce decrees which become final after June 26, 1981, and pursuant to the federal Uniformed Services Former Spouse's Protection Act (PL 97–252)."

**18.** *Earnest, Inc. v. LeGrand,* see note 8, supra; *State ex rel. Thompson v. Ekberg,* 613 P.2d 466–67 (Okla.1980).

**19.** Ten states refuse to allow a reevaluation of a prior property division: *Andresen v. Andresen,* see note 7, 564 A.2d at 405, supra (Divisible before *McCarty,* but no procedure to reopen final property division.); *Curl v. Curl,* see note 7, 772 P.2d at 208, supra (Spouse not entitled to reopen divorce decree on ground that case law pursuant to which property rights had been determined had been statutorily repealed.); *Chrun v. Chrun,* 751 S.W.2d 752, 755 (Mo.1988) (Trial court could not reopen divorce proceeding in equity to divide military pension.); *Holler v. Holler,* 257 Ga. 27, 354 S.E.2d 140–41 (1987) (No statutory basis for revision or modification.); *Koepke v. Koepke,* 732 S.W.2d 299–300 (Tex.1987) (Although the Texas Court recog-nized that military retirement benefits may be retroactively divided, no division was allowed if, as here, the military retirement benefits were expressly awarded in the divorce decree.); *Bishir v. Bishir,* see note 6 at 826, supra (No statutory provision allowing modification of property award.); *Throckmorton v. Throckmorton,* 767 P.2d 121, 124 (Utah App.1988) (Change in case law allowing division of military retirement benefits did not justify retroactive distribution of the pension.); *Marriage of Wise,* 46 Ohio App.3d 82, 545 N.E.2d 1314, 1316–17 (1988) (No division was allowed because separation agreement did not award benefits.); *Murphy v. Murphy,* 716 S.W.2d 870–71 (Mo.Ct.App. 1986) (Trial court was without jurisdiction to modify property distribution.); *Marriage of Yates,* 365 N.W.2d 49, 51 (Iowa Ct.App.1985) (New legislation would not support petition for modification of a dissolution decree to include military retirement benefits.)

Eleven states allow division: *Morales v. Morales,* 402 N.W.2d 322–23 (N.D.1987) (Judgment re-opened to divide military pension even though it was nondivisible under state law before *McCarty.*); *Norris v. Saueressig,* 104 N.M. 76, 717 P.2d 52, 54 (1986) (Divisible before *McCarty.*); *Marriage of Waters,* 223 Mont. 183, 724 P.2d 726, 730 (1986) (Divisible before *McCarty.*); ·*Casas v. Thompson,* see note 4, 228 Cal.Rptr. at 39–40, 720 P.2d at 927, supra (Divisible before *McCarty.*); *Marriage of MacDonald,* 104 Wash.2d 745, 709 P.2d 1196, 1198 (1985) (Divisible before *McCarty.*); *Edsall v. Superior Court,* see note 4, 693 P.2d at 901, supra (Divisible before *McCarty.*); *Rosen v. Rosen,* 225 N.J.Super. 33, 541 A.2d 716, 718 (1988), *cert. denied,* 111 N.J. 649, 546 A.2d 558 (1988) (Divisible before *McCarty.*); *Marriage of Valley,* 97 Or.App. 95, 775 P.2d 332, 334 (1989), *modified,* 99 Or. App. 252, 781 P.2d 1219 (1989) (Divisible before *McCarty.*); *Parshall v. Parshall,* 385 Pa.Super. 142, 560 A.2d 207, 211 (1989) (Divisible where rights were reserved in dissolution agreement. Modified to allow benefits from date of order.); *Marriage of Bingham,* 181 Ill.App.3d 966, 130 Ill.Dec. 829, 832, 537 N.E.2d 1158, 1161 (1989) (Divisible before *McCarty.*); *Thorpe v. Thorpe,* 123 Wis.2d 424, 367 N.W.2d 233–34 (1985) (Trial

ty of the jurisdictions which allow parties to reopen final decrees to divide military retirement benefits allowed division before *McCarty*. This was not the law in Oklahoma before the United States Supreme Court's decision in *McCarty*, nor is it now.

Our finding that § 1289(F) does not apply to modify the property divisions of a divorce decree to include military retirement benefits is supported by the language of 12 O.S.1981 § 1279.[20] Section 1279 provides that, except in cases of fraud, divorce is a bar to any claim of either party to the property of the other.[21] The wife does not assert that the military retirement benefits were not divided because of fraudulent concealment by her husband. On the contrary, the military retirement benefits were disclosed to the trial court at the time of divorce, and were set aside in the decree as the husband's separate property. The construction given § 1289(F) results in internal consistency within the statute, and allows the provisions within the same statutory scheme to be considered as a harmonious whole with effect given to each.[22]

## CONCLUSION

■ Property division provisions stand inviolate by actions of the divorced parties unless they act to vacate, set aside, or modify the decree in a manner authorized by statute.[23] Section 1289(F) does not provide the means to alter final divorce decrees for the division of military retirement benefits, as jointly acquired property.

court has discretion to modify award of military retirement benefits.)
See also, Annot., "Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses," 94 A.L.R.3d 176 (1979).

**20.** Title 12 O.S.1981 § 1279 provides:
"A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of either party in or to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party."
Section 1279 was renumbered effective November 1, 1989. It now appears at 43 O.S.Supp.1989 § 122.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED, TRIAL COURT REVERSED.

HARGRAVE, C.J., and HODGES, SIMMS, DOOLIN and SUMMERS, JJ., concur.

OPALA, V.C.J., concurs in judgment.

LAVENDER, J., concurs in result.

ALMA WILSON, J., dissents.

ALMA WILSON, Justice, dissenting:

The sole issue in this case is whether or not the appellee, Catherine L. Clifton, may rely upon the 1987 amendment of 12 O.S. § 1289(F) to modify her 1983 divorce decree and receive a portion of the military retirement benefits awarded solely to the appellant, Homer R. Clifton. I would find that such a modification is permissible under the statute.

The parties were married on April 12, 1966, and a divorce was granted in 1983. The parties were married sixteen of the twenty years which the husband served in the military. After the wife had briefed the issue of the divisibility of military retirement as marital property to the trial court and the court had ruled that she was not entitled to a portion of the retirement pay, the parties entered into an agreed settlement. The divorce decree found the husband was receiving $700.00 per month from the retirement benefits. No allowance was made for support alimony. Child support for the two children, ages 16 and 13 at the time the decree was filed, was set

**21.** *Shipp v. Shipp*, 383 P.2d 30, 33 (Okla.1963).

**22.** *Anderson v. Dyco Petroleum Corp.*, 782 P.2d 1367, 1376 (Okla.1989); *Young v. Mid–Continent Casualty Co.*, 743 P.2d 1084, 1086 (Okla.1987); *Inexco Oil Co. v. Corporation Comm'n*, 628 P.2d 362, 365 (Okla.1981).

**23.** *Henderson v. Henderson*, 764 P.2d 156, 159 (Okla.1988); *Reynolds v. District Court*, 198 Okla. 326, 177 P.2d 830, 832 (1946); *Arnold v. Arnold*, 194 Okla. 571, 153 P.2d 224, 226 (1944). Inherent in these decisions is a recognition that to allow the unfettered readjustment of vested property rights would disrupt settled principles of property law.

at $150.00 per month per child. Each received the property in that party's possession with the wife receiving a 1978 New Moon Mobile Home. The agreed settlement was not appealed.

At the time of the divorce Oklahoma did not consider a military retirement pension as jointly acquired and subject to property division. The pension could be taken into consideration for the purpose of setting support alimony. *Baker v. Baker*, 546 P.2d 1325, 1326 (Okla.1975). Other states allowed such a division, but this practice was abrogated by the Supreme Court of the United States when it held that federal law precluded a state court from dividing military pensions. *McCarty v. McCarty*, 453 U.S. 210, 232, 101 S.Ct. 2728, 2741, 69 L.Ed.2d 589 (1981). Because Oklahoma did not permit such division, *McCarty* made no change in our law. Congress overruled *McCarty* retroactive to the date of the Supreme Court's decision allowing the state courts to include military pensions as jointly acquired property. *See* Uniformed Services Former Spouses Protection Act, 10 U.S.C.A. § 1408(c) (West 1983). Because it was permissive, this act made no change in Oklahoma's law. On January 11, 1983, this Court decided *Carpenter v. Carpenter*, 657 P.2d 646 (Okla.1983) (as corrected Jan. 21, 1983, reh. den. Feb. 15, 1983). That case analyzed previous pension cases, including *Baker*, questioning certain conclusions in the case but not affecting the holding. *Carpenter*, 657 P.2d at 650. The Court held that a pension was a valuable right which had been purchased through joint efforts of the spouses to the extent that it had been acquired or enhanced during the marriage, and as such the pension became jointly acquired property. *Carpenter*, 657 P.2d at 651. On April 26, 1983, this Court in *Gates v. Albin*, 662 P.2d 1370 (Okla. 1983), remanded with directions to the trial court to effect a just and reasonable division of the husband's pension fund.

The first case which dealt with a military pension fund after the *Baker* decision was *Stokes v. Stokes*, 738 P.2d 1346 (Okla.1987). That case held that a military pension is not different from a private pension plan and was therefore divisible as jointly ac-

quired property. *Stokes*, 738 P.2d at 1348. *Stokes*, which was decided on June 30, 1987, relied upon the 1987 amendment to 12 O.S. § 1289, the Uniformed Services Former Spouse's Protection Act, and the intent of Congress with regard to the Act as expressed in the Senate Report.

From the dates of the cases and the statutes cited above, the conclusion is fair that the law at the time of the Cliftons' divorce was that a military pension was not joint marital property subject to division, but could have been considered for the purposes of support alimony. The property division in the divorce decree was not appealed even though *Carpenter* may have been cause to call the *Baker* decision into question.

I. THE 1987 AMENDMENT TO § 1289 OF TITLE 12 EXPRESSLY SPECIFIES RELIEF FOR "FORMER" SPOUSES IN DIVIDING MILITARY PENSIONS.

*Stokes* reviewed the 1987 amendment of § 1289, the United States Code to which subsection F refers, and the intent of Congress regarding the Uniformed Services Former Spouse's Protection Act. *Stokes*, 738 P.2d at 1347. From the *Stokes* case some conclusions may be inferred. The subject of subsection F is military pensions. Military pensions are divisible as jointly acquired property. The subsection refers to a federal act whose title provides relief for *former* spouses, leading to the conclusion that the relief is intended for those whose divorces are already final. Subsection F provides:

Pursuant to the federal Uniformed Services Former Spouse's Protection Act (PL 97–252), the provisions of subsection E of this section shall have retrospective and prospective application with regards to modifications for the purpose of obtaining support *or* payments pertaining to a division of property on divorce decrees which become final after June 26, 1981. [Emphasis supplied.]

An examination of subsection F reveals that the legislature intended that divorce

decrees may be *modified* for one of two reasons: either to set support alimony payments taking into consideration the military pension, OR to divide the military pension as property. Even the *Baker* case supports the first reason as it allowed military pensions to be considered in setting support alimony. *Stokes* supports the second reason as it holds that a military pension may be divisible as jointly acquired property.

The issue in the case at bar is a modification of an unappealed divorce decree for the purpose of dividing the husband's military pension as jointly acquired property. Subsection F states that the law allowing such modification shall be retrospective. The conjunction "or" allows no other interpretation. The word "or" connects words, phrases or clauses of equal rank. The sentence structure of subsection F reveals that the phrase "for the purpose of obtaining support" is the equivalent to "[for the purpose of obtaining] payments pertaining to a division of property." The phrases which are connected by "or" refer to the word "modifications". The language of the statute allows all divorce decrees "which become final after June 26, 1981" to be modified *for the purpose of obtaining support or for the purpose of obtaining payments pertaining to a division of property.* No other meaning is grammatically possible. The legislative intent of the subsection must be to allow modification of final divorce decrees to divide military pensions as marital property.

## II. RULES OF STATUTORY CONSTRUCTION MANDATE THAT THE 1987 AMENDMENT TO § 1289 OF TITLE 12 BE CONSTRUED TO ALLOW MODIFICATION OF DIVORCE DECREES TO DIVIDE MILITARY PENSIONS AS MARITAL PROPERTY.

The appellant argues that 12 O.S.1981, § 1279 (now renumbered as 43 O.S.Supp. 1989, § 122) provides for a bar to a claim by the appellee to appellant's military pension except in cases of actual fraud on his behalf. The statute provides:

A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of either party in or to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party.

The appellant states that because the legislature never amended § 1279 that it serves as the expression of the legislature that once a property division is adjudicated, it is final. He concludes that the legislature, consequently, could not have intended that military pensions be divided as property in a modification hearing.

In addition to § 1279, portions of § 1289 also provide that property divisions once adjudicated are not to be readjudicated. In 1983, § 1289 was amended. Subsection A was amended and a sentence was added which provided, "Payments pertaining to a division of property are irrevocable and not subject to subsequent modification by the court making the award." Additionally, subsection E was added permitting modification of support alimony. (1983 Okla. Sess.Laws, ch. 86, § 1.) In 1985, subsection E was again amended. An additional sentence added to the end so that the entire subsection read as follows:

Except as otherwise provided in subsection D of this section, the provisions of any divorce decree pertaining to the payment of support may be modified upon proof of changed circumstances relating to the need for support or ability to support which are substantial and continuing so as to make the terms of the decree unreasonable to either party. Only those installments accruing subsequent to the motion for modification may be modified. *The provisions of this subsection shall have retrospective and prospective application with regards to modifications for the purpose of obtaining support or payments pertaining to a division of property on divorce decrees which become final after June 26, 1981, and pursuant to the federal Uniformed Services Former Spouse's Protection Act (PL 97–252).*

(1985 Okla.Sess.Laws, ch. 188, § 1(E), underlining in original indicating additions to text.) In 1987, the sentence underlined above was removed and a new subsection F was added. (1987 Okla.Sess.Laws, ch. 130 § 1). No change in that subsection was made when the statute was renumbered 43 O.S.Supp.1989, § 134(F).

The purpose of citing the dates of these amendments and quoting the texts of them is to show that subsection F came later in time than 12 O.S.1981, § 1279 and later in time than the portions of § 1289 which appear to forbid all modifications of property division. The construction of a statute is done in the same manner in which one interprets any written or spoken word. Subsection F, like any other statute must be interpreted in the context of the whole section and within the context of the Act within which it appears. But the context of § 1289 is not ignored by determining that subsection F states an *exception* to the general rule found in §§ 1279 and 1289.

An old rule of statutory construction is found in 73 Am.Jur. 2d *Statutes* § 257 (1974):

> Where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision....

*See Western Auto Supply Co. v. Oklahoma Tax Comm'n,* 328 P.2d 414, 418 (Okla.1958).

The construction of subsection F has one subject. The subject is military retirement pay. Subsection E refers to modifications of support alimony in general. In general, property division set out in a divorce decree cannot be modified. But with regards to military retirement pay, a divorce decree can be modified if it became final after June 26, 1981. Such a construction gives meaning to all provisions of the statute in accordance with the rule stated above.

Besides showing that modification of property division in decrees involving military pensions is permissible without violating the context of the statute, another rule of statutory construction supports this reasoning. This rule is provided by the legislature itself:

> If the provisions of any code, title, chapter or article conflict with or contravene the provisions of any former code, title, chapter or article, the provisions of the latter code, title, chapter or article must prevail as to all matter and questions arising thereunder out of the same subject matter.

75 O.S.Supp.1989, § 22 (1985 Okla.Sess. Laws, ch. 40, § 1.)

Both of the rules cited above are found in our case law. The case of *State ex rel. Murphy v. Boudreau,* 653 P.2d 531 (Okla. 1982) discussed the conflict between two laws. That conflict was between the Uniform Child Custody Jurisdiction Act which set out specific guidelines for district courts to determine whether they had jurisdiction or should exercise jurisdiction in child custody matters and 12 O.S.1981, § 1277, which gave trial courts continuing jurisdiction to modify their own child custody and support orders. The case stated that a special statute making a specific requirement controlled over a general statute, and that the most recent legislative expressions must be given effect over conflicting prior enactments. *Murphy,* 653 P.2d at 534.

In application to the case at bar, subsection F is both a specific statute which controls over the general rule against modifying property divisions, and subsection F is the most recent legislative expression which must be given effect over the prior expressions of the legislature.

### III. RETROSPECTIVE MODIFICATION OF PROPERTY SETTLEMENTS INVOLVING MILITARY PENSIONS PROVIDED BY THE 1987 AMENDMENT TO 12 O.S. § 1289(F) IS CONSTITUTIONAL.

The appellant argues that a retrospective application of § 1289(F) as provided in the

statute is unconstitutional because the divorce decree was a final judgment and must therefore be governed by the law in force at the time of its rendition, remaining unaffected by later changes in the applicable law. This same argument was addressed by this court in *Nantz v. Nantz,* 749 P.2d 1137 (Okla.1988), involving the area of retrospective application of modification of support alimony.

In *Nantz* the former husband appealed a denial of a motion to modify the support payments due his ex-wife. She was cohabiting with a man and still continued to receive the payments. The decree provided that support alimony was subject to termination by the death or remarriage of the ex-wife. Subsequent to the divorce an amendment to § 1289 provided for the modification or termination of support if the spouse being supported cohabited with a member of the opposite sex. The amendment stated that *any* divorce decree was subject to modification. A subsequent amendment made the language stronger by providing that the amendment was to be "retrospective and prospective". This Court held that the amendment could constitutionally be given retrospective effect, and reversed and remanded the case. *Nantz,* 749 P.2d at 1141.

*Nantz* is distinguishable in that support alimony as opposed to property division was being modified by a retrospective statute. Nevertheless, the reasoning in the *Nantz* case concerning the constitutionality of retrospective application of statutes is relevant to the case at bar and is dispositive. This Court examined two methods for determining if a statute could be retrospectively applied. The first method was to determine if the right had vested. The case concluded that the use of the term "vested" was merely conclusional, as the courts still had to decide what constituted such a right. *Nantz,* 749 P.2d at 1140. The Court then addressed the second approach which was approved by the Supreme Court of the United States in *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). That test was whether the retrospective measure enacted rationally related the legisla-

tion to a legitimate governmental purpose. The *Usery* Court upheld the constitutionality of the act before it stating that legislation which readjusts rights and burdens is not unlawful solely because it upsets otherwise settled expectations.

*Nantz* found that the retrospective amendment before the Court was an attempt by the legislature to readjust the rights and burdens of the divorced parties in the area of support alimony. The Court stated that after support alimony has been set by the trial court, the party receiving the support can be said to have only a settled expectation of continuing to receive the support, because the death of the supporting party would end the support. The legislature had a rational basis for making the amendment retrospective because the regulation of marriage and divorce is entirely a legislative question and because prior law did not allow for contingencies of changed circumstances in the area of alimony support. *Nantz,* 749 P.2d at 1141.

The legislature in amending § 1289 to allow retrospective modification of property division involving military pensions was attempting to correct a situation which was inequitable. The intention of the legislation is to readjust the rights and burdens of the divorced parties in the area of property division involving military pensions. As in *Nantz,* the appellant can be considered only to have a settled expectation of receiving the military pension because that pension may be forfeited if he engages in certain activities. *McCarty v. McCarty,* 453 U.S. 210, 222, 101 S.Ct. 2728, 2740, 69 L.Ed.2d 589 (1981). The case of *Goodley v. United States,* 441 F.2d 1175, 1178, 194 Ct.Cl. 829 (1971), explicitly stated that "there is no vested or contractual right to retired pay, which is dependent upon statutory right rather than upon common law rules governing private contracts."

For the same reasons stated in *Nantz,* I would find that military pensions are settled expectations of receiving a certain pay, that legislation permitting retrospective division of military pensions is rationally related to the legitimate legislative purpose of regulating divorces and that therefore

the divorce decree in the case at bar is modifiable based upon the 1987 amendment to 1289. I would affirm the judgment.